381

John **KOZIK**

v.

Anthony J. **CELEBREZZE**, Secretary of Health, Education and Welfare.

Civ. No. C 62–639.

United States District Court
N. D. Ohio, E. D.

Oct. 16, 1963.

John L. Wagner, Moulton, Ricksecker & Wagner, Galion, Ohio, Charles D. Leach, Bulkley & Butler, Cleveland, Ohio, for plaintiff.

Merle McCurdy, U. S. Atty., for the No. Dist. of Ohio, Cleveland, Ohio, for defendant.

KALBFLEISCH, District Judge.

This is an appeal from a determination of the Appeals Council of the Social Security Administration which had affirmed a determination by the hearing examiner

that plaintiff was not entitled to a determination of a period of disability or to disability benefits.

In order to be entitled to benefits, the plaintiff must show that he was under a disability on or before December 1, 1960, and that he was entitled to disability benefits on or before December 19, 1960.

The onset of plaintiff's serious health problems appears to have occurred in April of 1960. Dr. M. M. Horowitz, who was plaintiff's personal physician, and who hospitalized him at that time, listed his symptoms as dizziness, weakness and dyspnea. He stated that plaintiff had a non-functioning gall bladder. On August 5, 1960, Dr. Horowitz said that the plaintiff had emphysema of the lungs and bronchitis. The heart was normal. The doctor stated that his activities should be limited, and that he was permanently and totally disabled. On August 13, 1960, Dr. Horowitz, in another report, noted there was pain in the shoulders and motion was limited in the upper extremities. He further noted that all kinds of activity resulted in dyspnea, and commented upon the existence of emphysema. The doctor predicted that no improvement could be expected, and said that plaintiff was permanently and totally disabled.

On March 8, 1961, Dr. Myron S. Reed removed the plaintiff's gall bladder. Since that time there appears to have been no serious disturbance caused by the gall bladder condition and, therefore, the gall bladder malfunctions were proved not to have been a permanent disability. The basic debilitating ailments upon which the plaintiff must rely if he is to prove disability at the required dates must therefore be his lung conditions.

On December 6, 1960, Dr. Robert W. Wolford, to whom the Social Security Administration sent the plaintiff for examination, reported that plaintiff was suffering from "pulmonary insufficiency of a moderate degree, secondary to pulmonary emphysema of an obstructive type." Dr. Wolford commented that employment of this patient must be of a restricted type "where little or no exertion is required, due to the ventilatory insufficiency." However, he felt that the patient could do something if he was rehabilitated and, therefore, the doctor said that he was not permanently disabled.

On April 20, 1961, Dr. Barney M. Wisinger reported that the plaintiff had a "mild decrease in his maximum breathing capacity * * * as compared with a very minimal or essentially within normal limits total vital capacity."

The record reveals a letter from Dr. Alfred Adler, addressed to the Bureau of Vocational Rehabilitation and dated August 8, 1961. At that time Dr. Adler reported that X rays showed that the plaintiff was suffering from chronic fibrosis, emphysema and silicosis. He stated that from 1945 until 1960 the plaintiff was not exposed to sand dust or welding dust, and implied that the silicosis was caused by conditions to which plaintiff was exposed by his employment between 1930 and 1944. Two days later, on August 10, 1961, Dr. Adler again reaffirmed this diagnosis and commented that the patient was totally and permanently disabled.

On April 9, 1962, Dr. Bernard M. Mansfield, who had been treating the plaintiff since August of 1961, reaffirmed the diagnosis previously given by Dr. Adler and stated that in his opinion the plaintiff would never again return to work.

The record shows that plaintiff was born in 1900 and had six years of schooling. He never did any kind of work other than hard labor in such places as steel mills and foundries. For some years he had been working as a sheet metal worker, which occupation obliged him to lift objects which often weighed more than 100 pounds. He quit that work on April 28, 1960, because of his health. He says that since then he has been extremely short of breath, even to the extent that he is afraid to perform minor household tasks. His former employer, the American Steel Grave Vault Company, wrote the hearing examiner on April 9, 1962, stating that the plaintiff

had returned to work on July 17, 1961, and attempted to do light chores, but was unable to continue even that work after seven days. "He seemed to be all in and constantly unable to get his breath." The only objective examinations which have been made of the plaintiff's vital capacity reveal that it is about 72%.

Upon the record, the hearing examiner denied the application. The record reveals that he conducted a fair and thorough hearing. He was primarily troubled by the fact that, in spite of the obvious manifestations of breathing limitations, the only objective tests reported to him revealed a vital capacity of 72%.

■ In order to prevail, the plaintiff is required by statute to establish three elements. The first is that there must be a "medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." The second is that there must be an "inability to engage in any substantial gainful activity." And thirdly, the inability must be "by reason of" the impairment. Section 416(i) (1), Title 42 U.S.C.A., and Meola v. Ribicoff, 207 F.Supp. 658 (S.D. N.Y., 1962), citing Pollak v. Ribicoff, 300 F.2d 674 (2nd Cir., 1962). The hearing examiner held that the plaintiff was not disabled. He said during the hearing (Tr. 48): "If a man really has a remaining breathing capacity of about 72%, he is not disabled under the Social Security Act." It is evident that the examiner did not mean to say that plaintiff was not suffering from a permanent disease, and the examiner recognized that his physical condition did prevent his continuing with the kind of occupations in which he previously had been engaged throughout his life. (Hearing examiner's report, p. 9.) However, the examiner held that plaintiff's incapacity was not such as to preclude his engaging in some kinds of employment, and suggested that the plaintiff submit to medical or surgical treatment which would enable him at a later time to undertake new occupations. In spite of the fairness of the hearing, it is evident that both the hearing examiner and the Social Security Appeals Council were proceeding under an incorrect legal standard.

■ In this Circuit the numerous cases are far too clear to permit any court to tolerate the pursuit and employment of the incorrect legal criteria upon which the Department relies in this case. Here, the plaintiff is suffering from a medically determinable physical impairment which can be expected to result in death or to be of long continued and indefinite duration. If he is unable to engage in any substantial gainful activity, such inability is the result of this physical impairment. The only remaining question, therefore, is whether the plaintiff is unable to engage in any substantial gainful activity. In this Circuit, once a claimant has proved the existence of the requisite impairment and has further shown that he is unable to continue with his previous employment or to engage in any other kind of employment in which he may have engaged in the past, as the plaintiff did here, he has made his prima facie case. Jarvis v. Ribicoff, 312 F.2d 707 (6th Cir., 1963). Once he has made this prima facie case, if the Department believes that "there are other kinds of work which are available and for which the plaintiff is suited, it is the defendant's [Secretary's] burden to adduce some evidence from which a finding can be made that he can do some type of work; actually, not apparently. * * *" Ellerman v. Flemming, 188 F. Supp. 521 (W.D.Mo.), quoted and approved in Jarvis v. Ribicoff, supra. See also Erickson v. Ribicoff, 305 F.2d 638 (6th Cir., 1962); Rice v. Celebrezze, 315 F.2d 7 (6th Cir., 1963); Roberson v. Ribicoff, 299 F.2d 761 (6th Cir., 1962), quoting and approving Kerner v. Flemming, 283 F.2d 916 (2nd Cir., 1960); King v. Flemming, 289 F.2d 808 (6th Cir., 1961); and Hall v. Flemming, 289 F.2d 290 (6th Cir., 1961). See also Miller v. Celebrezze, 209 F.Supp. 511 (E.D.Ky., 1962); Harless v. Celebrezze, 213 F.Supp. 560 (E.D.Tenn., 1963); Johnson v. Celebrezze, 213 F.Supp. 726 (E.D.Tenn., 1963); Nunley v. Celebrez-

ze, 213 F.Supp. 6 (E.D.Tenn., 1963); and Walker v. Ribicoff, 213 F.Supp. 32 (N.D.Ohio, 1962). Furthermore, the Department must show that actual employment opportunities are available to the plaintiff in types of work which the Department finds him capable of performing. Erickson v. Ribicoff, supra. The burden of proof on both of these issues is upon the Secretary. Rice v. Celebrezze, supra. In this case the Department has failed to introduce any evidence of the work opportunities which are available to this plaintiff.

The case will be remanded to enable the Department to introduce evidence as to specific kinds of jobs for which plaintiff is qualified, in view of his physical and mental condition and his prior work experience, and, further, to introduce evidence that such jobs are actually available to him. In the absence of sufficient proof on both of these points, the plaintiff will be entitled to a determination of a period of disability and to disability benefits.